BATRA, Appellant,

v.

WRIGHT STATE UNIVERSITY, Appellee.■

[Cite as *Batra v. Wright State Univ.* (1992), 84 Ohio App.3d 350.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–707.

Decided Dec. 17, 1992.

BOWMAN, Judge.

Appellant, Prem P. Batra, began employment with appellee, Wright State University, in 1965 as an Assistant Professor of Biology. In 1975, appellant was promoted to Professor of Biochemistry and was appointed a member of the full-time faculty. In accordance with the yearly contracts he signed, appellant received twenty-two days of vacation leave each year.

In 1985, Wright State's financial books were examined by the Auditor of State, who cited Wright State for failing to maintain an accurate, centralized record-keeping system for vacation leave records for faculty and for failing to properly account for accumulated, unused vacation leave as a financial liability. Under the Wright Way Policy and Procedure Manual for university employees, Policy No. 4201, Wright State had established a policy that full-time faculty and staff could accumulate a maximum of forty-four days of vacation. The state auditor cited Wright State for failing to follow this policy because full-time faculty and staff had been permitted to accumulate vacation time in excess of forty-four days, thus placing a burdensome financial liability on the assets of Wright State.

Wright State's President, Paige Mulhollan, took action with regard to these citations and asked his staff to formulate a new policy to address the auditor's concerns. On March 31, 1986, Richard Johnson, Wright State's Interim Personnel Director, issued a memorandum changing the vacation leave accumulation policy to provide that each full-time faculty member can accrue vacation in an amount which can be earned in a two-year period, *i.e.*, forty-four days. The policy also provided that any employee who had an accumulated vacation balance in excess of forty-four days would have until June 30, 1988 to use the excess vacation time. As of July 1, 1988, any amount of vacation in excess of forty-four days would be eliminated from an employee's accrued balance of vacation.

Because appellant was concerned about using his accumulated vacation leave in one block of time as he was committed to teaching courses for the next two academic years, was the course director for a course sequence at Wright State that required he remain on campus during those years, and had research and writing commitments that could not broken, he discussed the issue with Johnson. Johnson suggested he talk to Edward Spanier, Vice President of Business and Finance, about an extension for using his accumulated vacation time. Appellant did speak with Spanier and he not only refused to give appellant an extension but he also informed appellant that, if he took all of his vacation, he would do so at his own peril.

By the end of the grace period, appellant had been able to use nineteen days of vacation. Thus, as of July 1, 1988, 197.97 days of vacation leave were removed from appellant's accumulated balance. This resulted in a monetary loss to appellant in the amount of $54,936.68.

In March 1987, appellant filed suit in federal court against Wright State. However, his claims were dismissed and re-filed in the Court of Claims. Wright State answered, asserting the statute of limitations and estoppel as affirmative defenses and, three weeks prior to trial, Wright State also submitted immunity as an additional defense. The case went to trial in September 1991, and Wright State waived the statute of limitations as a defense.

On May 1, 1992, the trial court issued its decision, finding that Wright State's implementation of Policy No. 4201 and the distribution of the March 31, 1986 memorandum was the exercise of an executive or planning function in making a basic policy decision which was characterized by the exercise of a high degree of official judgment or discretion. As a result, no liability could attach to this decision. Further, the court found that the grace period in which employees could use their accumulated vacation in excess of forty-four days was reasonable. The court, in finding that appellant failed to prove by a preponderance of the evidence that there was any actionable negligence for which Wright State was liable, rendered its decision in favor of Wright State. Appellant now brings this appeal and asserts the following assignments of error:

"Assignment of Error No. 1

"The Court of Claims erred, to the prejudice of Appellant, in failing to hold that Wright State University's 1986 vacation accumulation policy revision amounted to a breach of its contract to compensate Appellant for work he had already performed.

"Assignment of Error No. 2

"The Court of Claims erred, to the prejudice of Appellant, in holding that Wright State University was free to breach its contract with Appellant so long as that breach could be characterized as an 'executive' or 'planning' decision involving the exercise of discretion.

"Assignment of Error No. 3

"The Court of Claims erred, to the prejudice of Appellant, in finding that Wright State University had proven that its decision to retroactively impose vacation leave benefit limits, in breach of its contracts to compensate the Appellant for work he had already performed, was a 'discretionary function' for which no liability could attach."

In his first assignment of error, appellant asserts that the trial court erred in finding that Wright State had the right to retroactively deprive him of accumulated annual vacation benefits that he had earned over many years of service. Appellant asserts that, during the years prior to the memorandum indicating a change in policy, he had earned accumulated vacation leave without limitation. Because of this, appellant now asserts that Wright State cannot take away this benefit.

R.C. 124.14 confers power upon the personnel department of Wright State University to exercise the powers, duties and functions of the department of administrative services and the director of administrative services, including the power to prescribe, amend and enforce administrative rules for the purpose of carrying out the functions, duties and powers vested in and imposed upon the

director. Pursuant to that rule-making power, Wright State adopted the following change in sick leave and vacation records procedure, which was announced to its staff and faculty members by way of a memorandum dated March 31, 1986, which stated:

"Wright State University is centralizing sick leave and vacation records for its unclassified staff members and fiscal-year faculty members. This centralization will provide a standardization of procedures and will give the University the necessary information to calculate accurately its potential liability for sick leave and vacation costs. On April 1, 1986 the following changes in procedures will be effective.

"(1) Your supervisor will complete a *Record of Vacation and Sick Leave* form listing your accrued but unused vacation and sick leave balances as of March 31, 1986. * * *

" * * *

"(7) There is no maximum accrual of sick leave for an unclassified staff member or a fiscal-year faculty member. The maximum accrual of vacation for an unclassified staff member or a fiscal-year faculty member is that which can be earned in a two-year period (44 days for a 100% FTE employee). *Except for those individuals described in (8) below, any vacation accrual in excess of that which can be earned in a two-year period will be eliminated from an employee's balance at the end of a quarter.*

"(8) A current employee who has a vacation balance in excess of the amount that can be earned in a two-year period will have until June 30, 1988 to use the excess. As of July 1, 1988 any vacation amount in excess of that which can be earned in a two-year period will be eliminated from an employee's balance. At the end of each subsequent quarter, the employee's balance may not exceed that which can be earned in a two-year period.

" * * *

"There are no changes in the eligibility of an employee for sick leave and vacation, in the eligibility for payments at termination of special contracts and at retirement, in the maximum payments for vacation and sick leave at the termination of employment, and in the other areas of sick leave and vacation policies and procedures. You are encouraged to review Policies Numbered 4201 and 4202 of *The Wright Way: Policies and Procedures* for further information about the accrual and use of vacation and sick leave." (Emphasis *sic*.)

Policy No. 4201 provided that the maximum accrual of vacation for one hundred percent full-time-equivalency employees was forty-four days. However, in contravention of this policy, Wright State had permitted its employees to accumulate vacation without any limitation. This policy changed when, after an

audit by the Auditor of State, Mulhollan decided to comply with the previous policies. The memorandum of March 31, 1986 was his attempt to enforce the policy.

Appellant agrees that Wright State had the authority to change its policy; however, appellant asserts that this change cannot be applied retrospectively to deprive him of the vacation that he had already earned. This court agrees.

In *Ebert v. Stark Cty. Bd. of Mental Retardation* (1980), 63 Ohio St.2d 31, 17 O.O.3d 19, 406 N.E.2d 1098, the court held that, once sick leave credits were earned, they became a vested right of the employee and could not be retroactively revoked. In *Ebert*, the Stark County Board of Mental Retardation adopted a sick leave policy prior to 1975 which exceeded the minimum levels prescribed in R.C. 124.38. Subsequently, the board reduced its sick leave policy to correspond with the levels prescribed by statute and, also, sought to retroactively reduce sick leave benefits accrued by board employees prior to 1975, which exceeded the statutory minimum levels. The court held that the board could reduce sick leave benefits to the levels prescribed by R.C. 124.38 but that the board could not retroactively reduce any accrued benefits. The court stated that, once the sick leave credits were earned, they became a vested right of the plaintiffs which could not be retroactively revoked. See, also, *Johnson v. Franklin* (1989), 64 Ohio App.3d 205, 580 N.E.2d 1142.

This reasoning is equally applicable in this case. While it was within the purview of Wright State to begin enforcing its policy so that it complied with the policy set forth in Policy No. 4201, such policy change could not be retrospectively applied. The vacation credits which appellant earned were vested and could not be taken away from him under any circumstances. As such, the trial court erred in holding that appellant lost the 197.97 vested vacation days he earned, but which he was unable to take by the end of the grace period, which were in excess of the forty-four days permitted to be accumulated under the enforced policy. Appellant's first assignment of error is sustained.

Appellant's second and third assignments of error are related and will be considered together. In these assignments of error, appellant asserts that the trial court erred in determining that Wright State's decision to implement the change in the sick leave and vacation records procedure was an executive or planning decision involving the exercise of a high degree of official judgment or discretion. Specifically, appellant asserts that the trial court erred in relying on *Reynolds v. State* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776.

This court agrees that Wright State's decision to enforce and implement a new sick leave and vacation records procedure was a basic policy decision; however, the issue of whether or not *Reynolds* is applicable to the facts of this case is not before this court since no policy change affecting a vested right can be applied

retrospectively. Accordingly, appellant's second and third assignments of error are overruled.

Appellant's first assignment of error is sustained, and the second and third assignments of error are overruled. The judgment of the trial court is reversed and this cause is remanded with instructions to the trial court to instruct Wright State University to credit appellant with an additional 197.97 days of vacation leave.

*Judgment reversed
and cause remanded
with instructions.*

McCORMAC and PEGGY BRYANT, JJ., concur.